**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JOHN C. FAHNER, Estate of,
by SHIRLEY FAHNER,   **CIVIL ACTION NO. 08-cv-14344**
As Personal Representative,
 Plaintiff,   **DISTRICT JUDGE PAUL D. BORMAN**

 vs.   **MAGISTRATE JUDGE MONA K. MAJZOUB**

WAYNE, COUNTY OF,
et al.
 Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DETERMINE SUFFICIENCY, TO DEEM ADMITTED, TO COMPEL PRODUCTION OF DOCUMENTS, TO COMPEL ANSWERS TO INTERROGATORIES, FOR SANCTIONS AND OTHER RELIEF (DOCKET NO. 41)  AND
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND OBJECTION TO PLAINTIFF'S NOTICE OF INSPECTION OF WAYNE COUNTY JAIL DIVISION I (DOCKET NO. 49)**

These matters are before the court on two motions.  The first is Plaintiff's Motion To Determine Sufficiency, To Deem Admitted, To Compel Production Of Documents, To Compel Answers To Interrogatories, For Sanctions And For Other Relief filed on July 30, 2009.  (Docket no. 41).  There was no response to the motion filed within the time for responding.  The parties were ordered to file a Joint Statement Of Resolved And Unresolved Issues by September 4, 2009.  (Docket no. 43).  The Court allowed the parties an extension to file their joint statement on September 8, 2009 as requested.  The parties filed a document on September 8, 2009 which is titled "Joint Statement Of Unresolved Issues Concerning Plaintiff's Motion Dated July 30, 2009," which contains two separate documents signed by the respective parties, not a joint statement, and raises new issues not set forth in Plaintiff's original Motion.  (Docket no. 44).  Defendants, who missed

-1-

the response deadline to Plaintiff's Motion have included as their portion of the purported "Joint Statement" a document which appears to be a Response Brief and addresses the new issues raised by Plaintiff's portion of the "Joint Statement."

The second motion is Defendants' Motion For Protective Order And Objection To Plaintiff's Notice Of Inspection Of Wayne County Jail Division I filed on September 23, 2009. (Docket no. 49). Plaintiff filed a Response To Defendants' Motion For Protective Order And Objection on October 7, 2009. (Docket no. 52). Defendants filed a Reply To Plaintiff's Response on October 19, 2009. (Docket no. 53). These matters have been referred to the undersigned for hearing and determination pursuant to 28 U.S.C. § 636(b)(1)(A). (Docket no. 42, 50).

**I.      Plaintiff's Motion (Docket no. 41)**

According to the parties' "Joint Statement," the only remaining unresolved issues with respect to Plaintiff's Motion are the sufficiency of Defendants' responses to Plaintiff's Request to Admit Nos. 1-7, 9-12 and 24-27, Defendants' Answers to Plaintiff's Interrogatory Nos. 1, 8-13, 18 and 23-25 and Defendants' Responses to Plaintiff's Requests for Production Nos. 1, 3, 4 and 6-11.

As an initial matter, Defendants argue that Plaintiff's motion should be denied because Plaintiff has not sought concurrence in the motion pursuant to Fed. R. Civ. P. 37(a)(1). The Court will not deny Plaintiff's motion on this basis. Plaintiff's signed motion contains a statement that Plaintiff attempted to seek concurrence in the relief sought, Defendants failed to timely respond to Plaintiff's motion and timely raise this issue, and Defendants have not shown the Court that Plaintiff acted in bad faith in seeking concurrence.

A.    **Sufficiency of Defendants' Responses to Plaintiff's Requests to Admit**

Plaintiff served Combined Discovery Requests Including Requests for Admissions, Interrogatories, And Requests For Production Directed to All Defendants on June 25, 2009. On July 27, 2009 Defendants served answers to the Requests for Admissions. Plaintiff argues that Defendants' answers to Plaintiff's Request for Admission Nos. 1-7, 9-12 and 24-27 remain unresolved, are incomplete and insufficient and Plaintiff brings his motion to determine sufficiency under Fed. R. Civ. P. 36(a). (Docket no. 41, 44).

Plaintiff served 27 Requests for Admission. Each Request for Admission states that "if your answer is anything other than an unqualified admission, please state the following" and lists ten sub-parts each, lettered a-j. (Docket no. 41-2). The Requests were directed to "all Defendants."

Under Rule 36, Fed. R. Civ. P.,

> [A] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents."
>
> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny. Fed. R. Civ. P. 36(a)(1), (4)

Plaintiff's Requests far exceed the scope of Fed. R. Civ. P. 36(a)(1) and Plaintiff has effectively turned twenty-seven Requests for Admission into a potential 270 Interrogatories by making an additional ten inquiries for each denied Request for Admission. *See generally In re Olympia Holding Corp.*, 189 B.R. 846, 853 (Bkrtcy. M.D.Fla. 1995) ("Requests for admissions and

interrogatories are not interchangeable procedures." One of the reasons the court found that Plaintiff's request for admissions was improper was because "it impermissibly required the defendant to provide explanations of denials."). The Court will strike Plaintiff's extraneous subparts to the unresolved Requests to Admission.

Despite lengthy explanations in response to many of the Requests for Admission, Defendants have included with their explanations full denials in answer to Request for Admission Nos. 1-6, 9, 10, 12, 24, 25. In answer to Request for Admission No. 26 Defendants stated "Denied as contrary to fact." The Court finds that these full and specific denials, despite the accompanying explanatory statements, are sufficient answers in compliance with Rule 36. Fed. R. Civ. P. 36(a)(4). The Court also finds that Defendants' answer to Request for Admission No. 27, which is denied as untrue in part, is adequately qualified and explained in detail. Fed. R. Civ. P. 36(a)(4).

Defendants' answer to Request for Admission No. 7 does not fully comply with Rule 36 because Defendants have not admitted, denied or stated that they can neither admit nor deny, despite the explanation provided by Defendants in their answer. The Court will order Defendants to amend their answers to Request for Admission No. 7. Defendants' answer to Request for Admission No. 11, despite its explanation, stated both that Defendants can neither admit nor deny and that it is "[u]pon information and belief" denied as untrue. The Court will order Defendants to amend the answer to specifically state which portion of the Request is denied and which is neither admitted nor denied. The Court will deny Plaintiff's request that the Requests to Admit be deemed admitted.

**B.     Plaintiff's Interrogatory Nos. 1, 8-13, 18 and 23-25**

Plaintiff argues that the following Interrogatories remain unresolved: Interrogatory Nos. 1, 8-13, 18, 23-25. The Court notes that at the time of filing Plaintiff's original Motion (docket no. 41),

Defendants had served no answers or responses to Plaintiff's Requests to Produce and Interrogatories. By the time of filing the Joint Statement, however, Defendants had served both answers and responses. As a result, Plaintiff raises new and substantive issues in the Joint Statement which were not before the Court in Plaintiff's original Motion. Defendants have had an opportunity to respond to these issues in their own portion of the Joint Statement. (Docket no. 44). Therefore, the Court will address a portion of these newly raised issues. Plaintiff has not, however, complied with E.D. Mich. Local Rule 37.2 by including with its motion a copy of or "a verbatim recitation of each . . . answer, response, and objection which is the subject of the motion." Therefore, to the extent that the deficient response, answer or objection is not included with either parties' pleadings or the Joint Statement, the Court will not consider that issue. The Court will not consider or grant Plaintiff's requests for information outside of the scope of the original discovery requests as written.

As an initial matter, the Court finds that Plaintiff's Interrogatories are relevant. Fed. R. Civ. P. 26(b). Interrogatory No. 1 asks for identifying information for the persons answering or contributing to the answers to the interrogatories. In the Joint Statement Defendants argue that their failure to answer this Interrogatory was an oversight and they will provide the signed answer. The Court will order the same.

Interrogatory No. 18 asks, "[i]n June 2006, who conducted the arrival health screening fo Sean Pollard/Shawn Johnson?" (Docket no. 41-2). Interrogatory No. 8 asks the same question, without including the reference to June 2006. Defendants answered, "If you are referring to the signature on page 960 of Defendants' Response to Plaintiff's Request for Production of Documents, that is Karen Carson's signature." (Docket no. 44).

Defendants' response does not answer the Interrogatories as asked. The Court will order Defendants to amend their answers to respond directly to the Interrogatories as asked, providing the name of the individual(s) who conducted the "arrival health screening." If Defendants are answering the Interrogatories by producing business records pursuant to Rule 33(d), Fed. R. Civ. P., they must do so in compliance with the Rule, specifying the record containing the responsive information with "sufficient detail to enable the interrogating party locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d)(1). Defendants' answer must identify the individual(s) who conducted the arrival health screening.

Plaintiff in the Joint Statement raised issues which were not included in the original Interrogatory Nos. 8 and 18, including asking Defendants to identify signatures appearing on numerous documents identified only by bates number. Plaintiff has not provided Defendants' responses or these extraneous documents to the Court or otherwise explained how this new request for the identification of signatures is encompassed in the original Interrogatories. The Court will not order Defendants to respond with information outside of the original Interrogatory Nos. 8 and 18.

Interrogatory No. 9 has two sub-parts and is relevant. It asks for information related to SeanPollard/Shawn Johnson, special custody assignments, periods of confinement, offense, designation and any incidence leading to a change in designation. Defendants reference Document nos. 171-72 for housing assignments for all periods of incarceration and lists incidents including assaults, disruptive behavior and victimization from an assault. (Docket on. 44). Plaintiff argues that the documents do not give the "security level" or indicate whether Pollard/Johnson was "ever isolated, removed to psychiatric, etc." Plaintiff's Interrogatory asks whether Pollard/Johnson ever

had special custody assignments, but does not specifically ask for "security level" or whether he was isolated or removed to psychiatric.

Defendants' answer does not respond fully to the Interrogatory as written. Defendants must identify which incidences lead to a change in designation for the name(s)/individuals which Defendants listed in their answer. If the security level, and any isolation or removal to the psychiatric ward is a "special custody assignment" or designation, then Defendants must identify the same.

Interrogatory No. 10 asks "who was staffing the Health Care Unit at the Wayne County Jail" at the time of the intake/booking/pre-classification of Pollard/Johnson in June 2006? Plaintiff objects that the documents produced by Defendants do not answer the question. The Court does not have the documents for review. Defendants in the Joint Statement explained that their response refers to specific document pages containing afternoon shift assignments and the Nursing Services Assignment Schedule for the date in question, which contain "the entire universe of employees assigned to staff Division 1 on that date, at that time, including the Health Care Unit." Defendants' response must identify *which* employees were staffing the Health Care Unit, not *all* employees in the entire Division 1. The Court will order Defendants to amend their answer to list the employees staffing only the Health Care Unit on that date.

Interrogatory Nos. 11 as and 12 ask at the time of the intake/booking/preclassification of Pollard/Johnson in June 2006, "[w]ho was staffing the Classification Unit at the Wayne County Jail," (No. 11) and "[w]ho was the Classification Sergeant at the Wayne County Jail" (No. 12)? Defendants answered by identifying documents which contained the Lieutenant's Report for the afternoon shift assignments. Plaintiff argues that the documents do not answer the interrogatory.

As set forth above, neither party has provided the Court with a copy of the responses at issue. While Defendant may properly respond to an interrogatory by producing business records, they must be specified in sufficient detail "to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d)(1). The Court will order Defendants to serve an amended written answer identifying by name the specific staff responsive to Interrogatory Nos. 11 and 12 or, if not staff were assigned, to so state.

Interrogatory No. 13 asks at the time of the intake/booking/pre-classification of Pollard/Johnson in June 2006 what numerical designation did Close Security have for Pollard? Defendants objected to the form, stated that it made no sense and could not be answered in the manner in which it was phrased and stated "[i]f you mean what housing classification did the inmate assigned CIN 300109 have, the answer is: None." Plaintiff argues that "[t]his answer does not fairly meet the request. Please see document 1000, which indicates he was "level one in yellow garb. What security level?" Again, Plaintiff has not provided the Court with the document at issue. Defendant argues that document 1000 was created in 2009 and has nothing to do with the June 2006 time frame designated in the Interrogatory. The Court agrees. Plaintiff cannot revise his written interrogatories in his Motion to Compel. The Court also finds that Defendants have sufficiently answered Interrogatory No. 13 by identifying the prisoner by number and stating that he had no housing classification numeric designation at the time.

Interrogatory Nos. 23 though 25 ask Defendants to identify by name, race and sex three individuals: Mears with log on number 2685, Harris with log on number 1863 and Taylor with log on number 3502. Plaintiff argues that Defendants have failed to provide the race for each and stated that "[t]here are two (sic) individuals who had contact with Pollard named 'Mears, Harris, and

Taylor.'" Defendants' objection that answering these interrogatories would require them to answer more than the twenty-five interrogatories, including all discrete subparts, allowed under Fed. R. Civ. P. 33(a)(1) is without merit. The term "discrete subparts" does not have a precise meaning, however, "courts generally agree that 'interrogatory subparts are to be counted as one interrogatory . . . if they are logically or factually subsumed within and necessarily related to the primary question.'" *Trevino v. ACB American, Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006). The Court finds that Plaintiff's "Interrogatories" do not number more than 25, "including all discrete subparts." The interrogatories are succinct and any subparts, for example seeking "name, race and sex," are consumed within the single interrogatory. Defendants admit in the Joint Statement that they provided only names of the individuals. The Court will order Defendants to answer Interrogatory Nos. 23 through 25 in full, including sex and race for each named individual.

**C.     Plaintiff's Request to Produce Nos. 1, 3, 4 and 6-11**

As an initial matter, in light of the ambiguity of some of Defendants' responses as to whether or not other documents or responsive items may exist, the Court will order Defendants to produce an affidavit of their counsel setting forth the steps taken to identify, locate and produce responsive documents and items to the Requests to Produce that remain unresolved, including persons from whom counsel sought information, and places and dates that documents and items were sought.

Request No. 1 asks Defendant to "[p]roduce the Health Services Housing Report for Sean Pollard/Shawn Johnson utilized by Wayne County Jail in June 2006 which led to the housing decision for Sean Pollard/Shawn Johnson." Plaintiff merely states that this is "unresolved." Defendants argue that they stated "No document(s) responsive to this request are known to exist."

Plaintiff has argued no basis for which this response is "unresolved" or otherwise incomplete or insufficient. The Court will deny Plaintiff's Motion as to Request to Produce No. 1.

Request to Produce No. 3 asks Defendants to "[p]roduce the Arrival Health Care Screening Form completed for Pollard in June, 2006." Defendants argue that their initial response referencing document pages 959 and 960 was a mistake and they should have stated that "No document(s) responsive to this request are known to exist." The Court will order Defendants to amend their response consistent with this statement.

Request to Produce No. 4 asks Defendants to produce "[a]ll recorded interviews of any inmate or officer relative to the Internal Affairs or any other investigation of John Fahner's death." Defendants responded that they previously served Plaintiff "with audio copies (three CDs) of the Internal Affairs Division interviews and a copy of the transcript of these interviews. As of this time, Plaintiff's counsel has not reimbursed defense counsel for the cost of these items. There are no other recorded interviews believed to exist." (Docket no. 44). Defendants indicate that there are no other responsive documents or things. Plaintiff points out that it received transcripts and recordings of different portions of interviews and Plaintiff offers to "reimburse ½ cost of the audio recordings paid by Defendants, upon receipt of all recordings." (Docket no. 44). The Court will order Defendants to produce the complete transcripts and complete audio recordings in full. Plaintiff will bear the full copying costs of the transcripts and the audio recordings.

Request to Produce No. 6 asks Defendants to produce "recorded documentation, video/digital of any of the jail areas defendant Pollard was in during the dates of June 26, 2006 and June 27, 2006. This would include but not be limited to registry, health unit, quarantine and classification. In addition, please state the location/floor/cell of (sic) where defendant Pollard was held in the jail on

June 26, 2006 from the hours of 4:57 p.m. until 9:34 p.m. While the records of WCJ at the deposition of Eric Troszak reflect defendant Pollard was in "X" this request seeks information to elicit the exact physical location of Pollard at all times between the designated times." Plaintiff argues that Defendants' response, which includes the phrase "no such documents responsive to this request are known to exist," is not definitive as to whether documents exist or not. Defendants argue that they have stated that documents do not exist. Under Fed. R. Civ. P. 34, any party may serve on any other party a request to produce documents which "are in the possession, custody or control of the party upon whom the request is served." "The word "control" is to be broadly construed. A party controls documents that it has the right, authority, or ability to obtain upon demand." *Scott v. AREX, Inc.*, 124 F.R.D. 39, 41 (D. Conn. 1989). The Court will order Defendants to amend their answer and produce all responsive documents within their possession, custody or control or state that they have no responsive documents or items within their possession, custody or control. Fed. R. Civ. P. 34(a)(1).

Request To Produce No. 7 asks Defendants to "produce all post orders for registry, classification and quarantine which were in effect on June 26, 2006 and June 27, 2006 relevant to this matter." Plaintiff simply argues that this Request is "unresolved." Defendant responded: "'Quarantine' does not relate to any area at issue in this lawsuit; and, a request for "all" post orders is overbroad. Not "all" post orders are relevant to the claims and defenses in this case. Also, some post orders are not discoverable due to security concerns that would arise upon dissemination. Please specify which post orders you are requesting so that Defendants may either respond or formulate an appropriate objection. Defendants' objection stands." (Docket no. 44). Defendants raise only general "security concerns" without moving for a protective order or producing a privilege

log as required by Fed. R. Civ. P. 26(b)(5). The Court will order Defendants to produce a privilege log in compliance with Rule 26(b)(5) identifying *each and every* post order for registry, classification and quarantine[1] which was in effect on June 26, 2006 and June 27, 2006.

The burden of establishing privilege and non-waiver rests with the person asserting it. *See In re VisionAmerica, Inc. Sec. Litig.*, 2002 WL 31870559, at *2 (W.D. Tenn. Dec. 18, 2002). The privilege log must describe the nature of the documents or other things not produced and "do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). Defendant's privilege log should contain sufficient information for the Court and Plaintiffs to determine whether the documents at issue are properly subject to a privilege or protection. The Court can reject the claim of privilege where the party invoking the privilege "does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege." *Bowne, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993). The log should also contain enough information for Plaintiff to determine which of the orders are relevant and from which Plaintiff may seek copies of specific orders. The Court notes that Defendants have not alleged that production of the orders is overly broad or otherwise burdensome and has waived any objection on that basis.

Request to Produce No. 8 asks for the results of the wants and warrants check performed by Mears during the booking process of defendant Pollard, including the agency designation and query designation used for the query, the date and time of the query. The information is relevant and the Court will order Defendants to respond in full, even if, as Defendants argue "no record or printout

---

[1]The Court finds that the issue of "quarantine" may be relevant to issues in this matter including whether the inmate identified as Pollard and/or Johnson should have been held with the general population. Fed. R. Civ. P. 26(b)(1).

was generated at that time." The request includes electronically stored information in any medium from which information can be obtained directly or after translation by the responding party into a reasonably usable form. Fed. R. Civ. P. 34(a)(1)(A). Defendant must also produce the "LEIN printout" if it was a result of the wants and warrants check.

Request to Produce No. 9 asks for the complete policy and procedure manual for WCSO referred to by Eric Troszak in his deposition of June 10, 2009. Defendants selectively determined which policies and procedures were relevant and produced those. Defendants respond that Plaintiff's should "identify" any other policies and procedures which it wants with enough specificity for Defendant to respond. Plaintiff agrees to production pursuant to a protective order.

Defendants have not sought a protective order or otherwise moved from protection of this material and in the Joint Statement Defendants did not object to this request on the basis of privilege or allege that the material is sensitive or otherwise subject to protection. (Docket no. 44 at 28 of 30). Defendants may not unilaterally limit Plaintiff's request. The Court will order Defendants to produce the complete policy and procedure manual.

Request to Produce No. 10 asks Defendants to "produce the 'directive' referred to by Eric Troszak in his deposition June 10, 2009. Defendants' response stated "Attached is an example of such a directive." Plaintiff argues that there was no directive "attached" to the response. Defendants' response is non-responsive. Defendants have raised no objection including ambiguity or privilege or asserted the need for protection of the directive(s) in either the Joint Statement or in Defendants' verbatim recitation therein of their response to Plaintiff's Request to Produce No. 10.

The Court will order Defendants to produce a full and complete copy of the specific directive referred to by Eric Troszak in his deposition of June 10, 2009.

Request to Produce No. 11 asks Defendants to produce all records, complaints, documents or any other things relating to every instance of inmate-on-inmate assault for the 5 years preceding and following the date of this incident, whether investigated or not and if investigated, the complete investigation file. Defendants argues that although the material may be within the scope of discovery due to Plaintiff's *Monell* claim, the Court should balance Plaintiff's need and Defendants' burden in this matter.

Defendants concede that the documents and things sought by Plaintiff may be relevant and the Court finds that they are. Fed. R. Civ. P. 26(b). The Court must limit the extent of discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). Here, the potential benefit of the proposed discovery and the importance of the issues in the case is great and weighs in favor of allowing at least some discovery of the matters. Defendants argue that the burden of responding to this Request is high. Defendants argue that Division 1 is one of three adult jails and the assault in this case occurred at Division 1 in "Registry." Defendants state that they offered Plaintiffs a manual inspection of all inmate-on-inmate assaults in Division 1 for one year prior to the assault and that there are approximately 150-300 such assaults per year in Division 1. Defendants state that their employees have been reduced by 30-50% due to budget cuts and ask that Plaintiff bear the cost of paying overtime for one employee and pay an appropriate fee in advance for copy costs.

In light of the broad scope of Plaintiff's request weighed against the potential burden and likely benefit, the Court will limit Plaintiff's request to all of Division 1 (not limited to only Registry) for the two years preceding and two years following the date of the incident, reducing the records to be searched from a total of ten years to four years, a reasonable time frame from which to look at past conduct and assaults and proceeding conduct and assaults. According to Defendants' estimate of 150-300 assaults per year, this reasonable limitation will give Plaintiff a view of somewhere between 600 and 1200 such assaults. The Court will order Defendants to bear their own labor costs in identifying, reviewing and locating the responsive files and documents and Plaintiff will bear the costs, including labor costs, associated with copying the files and documents, which may include Plaintiff hiring a copy service to copy the files and documents onsite, paying Defendants' copy costs including labor, or Plaintiff providing its own labor for copying the files and documents onsite. To the extent that Defendants assert any privilege including executive privilege, to the investigative files and investigation reports, Defendants must produce a detailed privilege log in compliance with Fed. R. Civ. P. 26(b)(5) as set forth above.

### D.     Plaintiff's Request for Attorneys Fees

The Court will deny Plaintiff's request for attorneys fees. This is a situation created by both parties. Many of Plaintiff's discovery requests are overreaching as set forth above, and Plaintiff has failed to comply with E.D. Mich. LR 37.2. Defendants have failed to provide sufficient answers to several requests and interrogatories in compliance with the Federal Rules of Civil Procedure. Fed. R. Civ. P. 37(a)(5)(A)(i) and (ii).

### II.    Defendants' Motion For Protective Order And Objection To Plaintiff's Notice Of Inspection Of Wayne County Jail Division I (Docket no. 49)

Defendants bring their motion seeking a protective order prohibiting Plaintiff from inspecting Wayne County Jail Division I because the structure of the jail is not relevant to a claim or defense, Plaintiff failed to appear for an inspection on July 3, 2009 and it is unduly burdensome for the Sheriff's Department to prepare for another inspection. (Docket no. 49).

On June 25, 2009 Plaintiff served a Notice of Inspection of Wayne County Jail Division I for inspection on Friday, July 3, 2009 at 2:00 p.m. Defendants stated that July 3 was a County holiday and as a result fewer inmates would be in the Registry area that day, therefore the Jail's Command Staff made special arrangements to move inmates, empty cells and have staff available for the inspection. Defendants' counsel alleges that he arrived for the inspection on that date and Plaintiff's counsel never appeared. Defendants' counsel called Plaintiff's counsel and was informed that they would not be appearing for the inspection. (Docket no. 49). According to the parties' Joint Statement of Resolved/Unresolved Issues (Docket no. 58), the parties "agree to disagree" as to whether Plaintiff attempted to confirm the July 3 inspection and Defendants' argument that no such attempts were made and "have agreed that the Motion should be resolved without considering this issue." (Docket no. 58).

Plaintiff argues that the Jail Inspection is relevant to (1) whether Registry officers are in a position to see Cell 7, (2) whether Registry officers are in a position to "hear a lot of turmoil," (3) how many officers are generally in Registry, and (4) how far the Registry officers' stations are from Cell 7. Plaintiff argues that the proximity of the correctional officers to the location of the assault and any potential visual obstructions would assist the trier of fact in determining whether Defendants knew of the substantial risk to Plaintiff. Defendants argue that these questions have been answered in the past and will be answered at future depositions. Defendants also argue that Plaintiff's request

to inspect "the areas of the Wayne County Jail where Sean Pollard *and* John Fahner were booked, housed or otherwise held in June of 2006 is not relevant because Plaintiff's arguments revolve around "Registry." The Court agrees that an inspection of the Registry area is relevant to the claims and defenses in this matter. Fed. R. Civ. P. 26(b). The Court finds that inspection of all areas in which Pollard and Fahner were booked, housed or otherwise held is too broad and the likely disruption to the County Jail, which Defendants argue houses up to 1,000 felons/suspected felons at a time, is unduly burdensome. Fed. R. Civ. P. 26(b)(2). Plaintiff has not argued any relevance or benefit which would weigh in favor of allowing such a burdensome inspection of the areas other than Registry.

Defendants argue that Plaintiff should not be allowed to inspect the jail because Plaintiff already failed to appear for one inspection, despite Defendants preparation. The case on which Defendants rely for this premise is distinguishable because in that case the court stated that both sides had reached an agreement as to the time and date of the inspection and the plaintiff "failed to appear and/or cancelled his appointments ahead of time on numerous occasions." *See Jenkins v. Wholesale Alley, Inc.*, 2006 WL 2716091 at *9 (N.D. Ga. Sept. 22, 2006). The parties in this matter have "agreed to disagree" as to whether there was a confirmed date for inspection and Plaintiff's failure to appear happened on a single occasion.

The Court will deny Defendants' Motion for a Protective Order in part and allow Plaintiff's counsel and photographer to inspect the Registry area including the Registration bubble as set forth below. The Court notes that in scheduling the July 3 inspection, Defendants stated that weekends, holidays and midnights were slower periods and it was therefore easier to prepare for an inspection. Defendants have not asked for such a limitation in their motion for protective order. However,

nothing in this Court's Order should be read to foreclose the parties' agreeing to schedule this inspection on a weekend, holiday or nighttime to lessen any burden on Defendants.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion To Determine Sufficiency, To Deem Admitted, To Compel Production Of Documents, To Compel Answers To Interrogatories, For Sanctions And For Other Relief (docket no. 41) is **GRANTED** in part and **DENIED** in part as follows and on or before December 16, 2009:

- a) Defendants will serve amended answers to Request for Admission Nos. 7 and 11 as set forth above;

- b) Defendants will serve complete amended answers to Interrogatory Nos. 1, 8, 9-12 and 23-25 as set forth above;

- c) Defendants will serve amended responses and responsive documents to Request for Production Nos. 3, 4 (for which Plaintiff will pay costs), 6, 7 (including a privilege log), 8, 9, and 10 as set forth above;

- d) In response to Request for Production No. 11 Defendants will produce all records, complaints, documents or any other things relating to every instance of inmate-on-inmate assault occurring at Division I for the 2 years preceding and 2 years following the date of this incident and Plaintiff will pay the copying costs including copying labor as set forth above.

- e) Defendants' counsel will produce an affidavit setting forth the steps taken to identify, locate and produce responsive documents and items to the Request for Production Nos. 3, 4 and 6-10, including persons from whom counsel sought information, and places and dates that documents and items were sought.

**IT IS FURTHER ORDERED** that Plaintiff's Motion (docket no. 41) is **DENIED** in part with respect to the following: Plaintiff's motion to deem Requests for Admissions admitted, Interrogatory No. 13, Request for Production No. 1 and Plaintiff's Request for Attorneys Fees and Costs.

**IT IS FURTHER ORDERED THAT** Defendants' Motion For Protective Order And Objection To Plaintiff's Notice Of Inspection Of Wayne County Jail Division I (docket no. 49) is

**DENIED** in part and **GRANTED** in part and Defendants will allow Plaintiff's Counsel and a photographer to inspect the Registry and Registration Bubble areas of the Wayne County Jail Division 1 at a mutually convenient date and time occurring on or before December 20, 2009.

### NOTICE TO THE PARTIES

Pursuant to Fed. R. Civ. P. 72(a), the parties have a period of ten days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. 636(b)(1).

Dated: December 03, 2009               s/ Mona K. Majzoub
                                        MONA K. MAJZOUB
                                        UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Order was served upon Counsel of Record on this date.

Dated: December 03, 2009               s/ Lisa C. Bartlett
                                        Case Manager