UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ESTATE OF JOHN C. FAHNER,
by Shirley Fahner, duly appointed
personal representative, of the Estate
Fahner,

        Plaintiff,

v.

COUNTY OF WAYNE, a corporate subunit
of Government, SHERIFF WARREN EVANS,
in his individual and official capacity,
UNDERSHERIFF, HAROLD CURETON, in his
individual and official capacity, CHIEF DIRECTOR
OF JAILS, JERIEL HEARD, in his individual and
official capacity, JAIL COMMANDER MALCOLM
D. THOMPSON, in his individual and official capacity,
SGT. MICHAEL LONG, 1661, in his individual and
official capacity, OFC. MEARS, 2685, in his individual
and official capacity, CPL. C. HALL, 1437, in his
individual and official capacity, OFC. BRIAN
GLATFELTER, 3525, in his individual and official
capacity, SEAN POLLARD a/k/a SHAWN JOHNSON,
DET. CLARA CARTER-STEELE, in her individual and
official capacity, NURSE BERNADINE TUITT, in her
individual and official capacity, LT. KEVIN SEMAK,
in his individual and official capacity, Jointly and Severally,

        Defendants.
_____/

Case Number: 2:08-cv-14344

Paul D. Borman
United States District Judge

Mona K. Majzoub
United States Magistrate Judge

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SANCTIONS AND RELIEF FROM JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(b)(3) (DKT. NO. 199)

This matter is before the Court on Plaintiff's Motion for Sanctions and Relief from Judgment

Under Federal Rule of Civil Procedure (60)(b)(3). (Dkt. No. 199.) Defendant Wayne County filed

1

a response. (Dkt. No. 202.) Plaintiff filed a reply. (Dkt. No. 203.) The Court held a hearing on March 22, 2012. For the reasons that follow, the Court GRANTS Plaintiff's motion, SETS ASIDE its June 22, 2011 Opinion and Order Granting Remaining Defendants' Motion for Summary Judgment (Dkt. No. 177) and ORDERS Wayne County to answer or otherwise respond to Plaintiff's February 15, 2010 Amended Complaint on behalf of Defendant Bernadine Tuitt on or before April 30, 2012.[1]

## I. BACKGROUND

Plaintiff filed this action as personal representative on behalf of John Fahner, who was murdered in the Wayne County Jail on June 27, 2006 by a fellow inmate. On June 22, 2011, this Court granted summary judgment on all of Plaintiff's claims as to each of the Wayne County Defendants, with the exception of Nurse Bernadine Tuitt, an ex-employee of Defendant Wayne County against whom a clerk's entry of default was entered on December 23, 2011. (Dkt. No. 177, June 22, 2011 Opinion and Order.)

Nurse Tuitt's whereabouts have proved a great mystery since this Court granted Plaintiff's motion to amend her Complaint to add Nurse Tuitt on February 12, 2010. (Dkt. No. 76, Order Granting Motion to Amend.) On June 28, 2010, Magistrate Judge Majzoub held a hearing on Plaintiff's motion to compel Wayne County to produce information regarding the location of Nurse

---

[1] The Court also DENIES AS MOOT Plaintiff's Objections to Magistrate Judge Majzoub's September 23, 2011 Order Denying Without Prejudice Plaintiff's Motion for Issuance of Subpoenas. (Dkt. No. 190.) In light of the fact that Mr. Gazall's deposition has occurred, Plaintiff's objections to the Magistrate Judge's Order are moot. Further, Plaintiff has indicated a willingness to set aside the clerk's entry of default against Ms. Tuitt if the Court awards Plaintiff the relief that is granted herein. Accordingly, the Court SETS ASIDE the Clerk's Entry of Default as to Bernadine Tuitt (Dkt. No. 170) and DENIES WITHOUT PREJUDICE Plaintiff's Motion for Entry of Default Judgment Against Bernadine Tuitt. (Dkt. No. 179.)

2

Tuitt. At the hearing, Plaintiff's counsel indicated to the Court that they believed that Nurse Tuitt was living in Brooklyn, New York with her sister and sought the Court's permission to obtain alternate service on Nurse Tuitt through her sister at the Brooklyn, New York address. At the June 28, 2010 hearing, counsel for Wayne County, Ms. Karie Boylan, when asked by Magistrate Judge Majzoub what she knew about the location of Nurse Tuitt, responded:

> THE COURT: Do you know whether, in fact, Ms. Tuitt is now living in Brooklyn, New York?
>
> MS. BOYLAN: I do not know. I have no idea where she is. . . .
>
> I have heard she's in Trinidad and Tobago. I've heard she's out of state. I've heard that she's here. I've heard she's in Canada.

(Dkt. No. 199, Pl.'s Mot. Sanc. Ex. 4, Transcript of June 28, 2010 Hearing, 12:11-17.) Following the hearing, Judge Majzoub entered an Order authorizing substituted service on Nurse Tuitt at her last known address in Brooklyn, New York. (Dkt. No. 156.) Nurse Tuitt never responded to Plaintiff's alternate service of the Amended Complaint in Brooklyn, New York.

On June 30, 2011, following this Court's grant of summary judgment in favor of all Defendants with the exception of Nurse Tuitt, Plaintiff filed a motion for entry of default judgment against Ms. Tuitt. (Mot. for Def. Judg., Dkt. No. 179.) Plaintiff sought to have judgment entered against Nurse Tuitt consistent with this Court's ruling on summary judgment and requested a jury trial to determine the amount of damages. (Mot. for Def. Judg. 2.) On July 8, 2011, this Court ordered Plaintiff to produce proof that Plaintiff had attempted to serve the motion for default judgment on Nurse Tuitt. (Dkt. No. 181.) In response, Plaintiff provided proof that Nurse Tuitt had been served with copies of the motion at the Brooklyn address previously approved by the Court for

substituted service. (Dkt. No. 182.) At the hearing on the motion for entry of default judgment, at which counsel for the dismissed Wayne County Defendants did not appear, the Court suggested to Plaintiff's counsel that he make further efforts to serve Nurse Tuitt with notice of the default and to focus his efforts to locate Nurse Tuitt on Wayne County and specifically offered the Court's assistance with issuing subpoenas if Plaintiff was unable to secure the cooperation of the County in his efforts to locate and serve Nurse Tuitt.

In the course of subsequent efforts to locate Nurse Tuitt, and to obtain the assistance of Wayne County in finding her, Plaintiff encountered several obstacles. Finally, on November 2, 2011, Wayne County agreed to produce Wayne County Corporation's lead litigation counsel, Robert Gazall, for deposition. As it turns out, Gazall had much to add to the conversation regarding Nurse Tuitt's whereabouts. Gazall testified that in fact he had been contacted by Nurse Tuitt in June, 2010, that he believed at the time that she was out of the country and that she left a Trinidad, Tobago phone number where she could be reached by return phone call. (Dkt. No. 199, Pl.'s Mot. Sanc. Ex. 1, Transcription of Telephone Voice Message left for Robert Gazall.) In fact, Mr. Gazall subsequently, in late June, 2010, returned a phone call to Nurse Tuitt at the Trinidad, Tobago phone number.

It is clear to the Court that Gazall was in possession of this information regarding Nurse Tuitt's whereabouts on or before June 28, 2010, the date on which Karie Boylan represented to Magistrate Judge Majzoub that Wayne County had no idea where Nurse Tuitt was located. On June 29, 2010, Gazall received a phone call in his office from Tuitt (the third contact he had with her over the course of five days) and conducted the call on speaker phone in the presence of Jim Surowiec, Assistant Wayne County Corporation Counsel, who memorialized the substance of Nurse Tuitt's call in a memorandum that he prepared that same day. Although the contemporaneous Surowiec

4

memorandum of the conversation with Nurse Tuitt was obviously relevant to determining Nurse Tuitt's whereabouts, a task to which both the Court and Plaintiff had devoted significant effort, Surowiec's memo was only produced to Plaintiff on November 2, 2011, the day that Gazall was finally produced for a deposition. (Dkt. No. 199, Pl.'s Mot Sanc. Ex. 5, Surowiec Statement.)

Surowiec's memorandum recounted that he was in Gazall's office at 9:00 a.m. on June 29, 2010 and that the two were awaiting a scheduled conference call with Detroit attorney Mary Massaron Ross on an unrelated matter. Gazall answered the phone, expecting Ross, and was greeted by Nurse Tuitt, whom Surowiec assumed to be a former employee who was out of the country and was explaining to Gazall that she was "not coming back." *Id.* Surowiec states in his memorandum of the call that Gazall was attempting to explain to Tuitt that he believed that Karie Boylan and David Robinson were attempting to contact her. Surowiec states that as soon as he heard the names of Boylan and Robinson he knew that the call was in reference to the *Fahner* case. According to Surowiec, Gazall explained to Tuitt that he was not her lawyer but explained the nature of the lawsuit, told her she might be a witness and encouraged her to contact Karie Boylan or David Robinson and gave Tuitt both of their phone numbers. Gazall further informed Tuitt that even though she was a former employee, if the Plaintiff did decide to sue her in the *Fahner* case, or if she was determined to have some culpability in that case, the County would provide representation for her. *Id.* Gazall stated to Tuitt, however, that he was not at that time her attorney and she should contact Boylan or Robinson. Gazall terminated the conversation and told Surowiec that he felt he had an ethical obligation to disclose the call to the parties in *Fahner* and left to meet with Wayne County to explain what had happened. Surowiec's notes of the call were made within a couple of hours after the call. *Id.*

5

On July 13, 2010, Magistrate Judge Majzoub held a hearing, at the request of Karie Boylan, during which Ms. Boylan disclosed the fact that Nurse Tuitt had contacted her supervisor, Robert Gazall, subsequent to Ms. Boylan's representation to Magistrate Judge Majzoub at the June 28, 2010 hearing that Wayne County did not know the whereabouts of Nurse Tuitt. (Dkt. No. 198, Transcript of July 13, 2010 Hearing, 3-4.) Ms. Boylan explained to Magistrate Judge Majzoub that Nurse Tuitt refused to disclose her whereabouts or her address but did give her phone number, with explicit instructions that the number not be given to anyone. *Id.* 4. Ms. Boylan explained to Magistrate Judge Majzoub, contrary to Mr. Surowiec's recollection of the substance of the Tuitt phone call, that Gazall had informed Ms. Tuitt "in no uncertain terms" that she was a party to the Fahner case, that efforts were being made to find and serve her and that she should call Ms. Boylan. *Id.* 5. Ms. Boylan represented to the Court that she was never subsequently contacted by Nurse Tuitt. *Id.* Ms. Boylan also took the position that she was under an ethical obligation, although she did not technically represent Ms. Tuitt, not to disclose her phone number. *Id.* at 10. Mr. Robinson, representing Plaintiff at the hearing before Magistrate Judge Majzoub, explained that he had spent over $3,000 trying to obtain service on Ms. Tuitt, and took the position that the County should be obliged to accept service on Nurse Tuitt since they had been in contact with her and knew how to get in touch with her. *Id.* at 8.

Ms. Boylan responded that she did not represent Nurse Tuitt and that she could not do so because under the terms of the Collective Bargaining Agreement ("CBA"), Nurse Tuitt was required not only to contact the County, but also to fill out paperwork and ask for representation. *Id.* at 8-9. Ms. Boylan explained that until Nurse Tuitt took the requisite steps, the County was not obligated to defend and indemnify her. *Id.* at 9. Ms. Boylan insisted that she was prevented from representing

6

Nurse Tuitt because her interests had potential to be adverse to her other client, the County, because if what Plaintiff alleged to have happened in fact occurred, Tuitt would be subject to disciplinary action. *Id.*

Wayne County counsel never pointed out to Magistrate Judge Majzoub that Ms. Tuitt's return phone number, which was a registered phone number in Trinidad, Tobago, made it clear that she was not in New York, as the parties had all assumed at the June 28, 2010 hearing. But because Ms. Boylan claimed to be ethically bound to respect Nurse Tuitt's request that her phone number not be given out (query why Boylan was so bound when Wayne County takes the position that they absolutely did not and cannot represent Nurse Tuitt) no one at the hearing, not Magistrate Judge Majzoub nor Plaintiff's counsel, was disabused of their belief that Ms. Tuitt was as likely to be found in Brooklyn, New York as anywhere else. Indeed, Plaintiff's counsel followed-up the day of the hearing with a motion for substituted service, seeking permission to serve Nurse Tuitt at her last known address, her sister's address in Brooklyn, New York. Ms. Boylan filed a brief in opposition to that motion, on July 22, 2010, stating that:

> Service on the County will do no good whatsoever, in that Ms. Tuitt resigned several years ago and has refused to communicate with this office other than the one phone call made to the undersigned's supervisor. There is also a question as to whether Ms. Tuitt is within any judicial district of the United States. More than one person asked has advised the attorneys in this case that Ms. Tuitt has moved from the United States. She has been rumored to be living in Canada, Trinidad and Tobago – all places where she has been rumored to have lived in the past. At most, the electric bill in Ms. Tuitt's name at her sister's residence in New York is probably the most direct evidence of her whereabouts.

(Dkt. No. 153, Br. in Opp. to Mot. Substituted Serv. 2.) Having received calls from Ms. Tuitt from a telephone number in Trinidad, Tobago just days earlier, Ms. Boylan continued to permit the Court and the parties to believe that Ms. Tuitt was just as likely in Brooklyn, New York as anywhere else.

7

In issuing its ruling permitting substituted service on Ms. Tuitt in Brooklyn New York, Magistrate Judge Majzoub relied heavily on the County's representations regarding their lack of knowledge as to Nurse Tuitt's whereabouts. Magistrate Judge Majzoub stated in her Order approving substituted service: "Defendants also mention rumors that Defendant Tuitt-Hill may be living out of the country in Canada or Trinidad and Tobago. Defendants do not otherwise substantiate these "rumors" . . . The Court finds that the evidence presented with Plaintiff's Motion shows that the most current and reasonably likely address for Defendant Tuitt-Hill is at the Brooklyn residence with her sister." (Dkt. No. 156, Order Granting Motion for Substituted Service, 1, 3.) Boylan's conduct is obstructive of justice and outrageous.

Gazall's deposition testimony illustrates that Boylan failed to present all relevant facts to Magistrate Judge Majzoub. Gazall testified at his deposition that Nurse Tuitt first contacted him, leaving a voicemail message, on or about June 21, 2010. Gazall did not get around to returning the call until a few days later, June 24th or 25th. *Id.* at 10-12. When he first returned the call, he thought Tuitt may have been referring to another case against the County, "Flemings," and not *Fahner*. *Id.* at 14. Gazall testified that after he ended that first conversation with Nurse Tuitt and contacted the lawyer on the "Flemings" case, Margaret Flanagan, she informed him, after he described to her the call from Nurse Tuitt, that the case Tuitt was calling about was *Fahner*, not Flanagan's case "*Flemmons*," and that Karie Boylan was the attorney handling the case. *Id.* 15-16. Thus, before the end of the week of June 21, 2010, Gazall was aware that Tuitt was calling about Karie Boylan's case and he had obtained both Boylan's and Robinson's phone numbers, which he passed on to Tuitt when she called him again on June 29, 2010.

During Gazall's deposition, Plaintiff's counsel attempted to examine Gazall on the terms of

8

the CBA's indemnification provision, specifically regarding the responsibility of the employee to request representation in writing on a specified form. Ms. Boylan placed a continuing objection on the record at the deposition (even though at this point all of her then-served clients had been dismissed on summary judgment) and would not permit Gazall, the lead litigation counsel at Wayne County and Boylan's supervisor, to answer questions regarding the representation provision of the CBA. *Id.* at 27-28. This was not proper, since Boylan no longer represented anyone in the *Fahner* case, and another Wayne County Attorney, William Pearson, was representing Gazall at the deposition. Indeed, Plaintiff's counsel pointed out at the deposition that Ms. Boylan had informed an employee in Plaintiff's counsel's office just a week earlier that she (Ms. Boylan) was no longer involved in the *Fahner* case, based upon this Court's dismissal of the County Defendants on Summary Judgment. Mr. Robinson, therefore, questioned Ms. Boylan's right to appear at Gazall's deposition and place objections on the record. *Id.* at 29-31. Nonetheless, Plaintiff's counsel ceased his questioning about the CBA.

Mr. Gazall admitted at his deposition that in the June 29, 2010 conversation with Ms. Tuitt, which Mr. Surowiec had memorialized in a memorandum, he had explained to Nurse Tuitt that if she was sued, the County would represent her. He also admitted that he never explained to her in that conversation that she had to specifically request that representation or jump through other hoops in order for the County to undertake the promised representation. *Id.* at 33. Gazall testified that it was his belief, though, that Ms. Tuitt, like all employees, had been informed of this responsibility in order to secure representation when she was hired. *Id.* at 34.

Plaintiff argues that Boylan's lack of candor with the Court regarding the fact that Nurse Tuitt had contacted the County from Trinidad, Tobago in late June, 2010, and expressed her intention not

9

to return, amounted to a fraud on the Court justifying relief from judgment under Federal Rule of Civil Procedure 60(b)(3). Plaintiff asks the Court to set aside its summary judgment ruling in favor of the County and to require the County accept service on behalf of Nurse Tuitt.

## II. STANDARD OF REVIEW

Plaintiff brings her motion under Federal Rule of Civil Procedure 60(b)(3), alleging that Defendants' counsel has committed fraud and misrepresentation on the Court. "The Sixth Circuit has held that fraud on the court is conduct: 1) on the part of an officer of the court; 2) that is directed to the judicial machinery itself; 3) that is intentionally false, wilfully blind to the truth, or is in reckless disregard for the truth; 4) that is a positive averment or a concealment when one is under a duty to disclose; 5) that deceives the court." *In re M.T.G., Inc.*, 400 B.R. 558, 565-66 (E.D. Mich. Bankr. 2009) (citing *Workman v. Bell*, 227 F.3d 331, 336, (6th Cir.2000)). The Sixth Circuit has further stated that these elements require "'that the individual accused of perpetrating the fraud must have directly interacted with the court to prevent an adversary from presenting his case fully and fairly.' A lawyer is an officer of the court while preparing her client's case." *Id.* (quoting *Computer Leasco, Inc. v. NTP*, 194 F. App'x 328, 338 (6th Cir. 2006)).

## III. ANALYSIS

Plaintiff argues that attorney Boylan misrepresented to the Court the County's knowledge regarding the whereabouts of Nurse Tuitt. While attorney Boylan did request a status conference with the Court to disclose the fact that Nurse Tuitt had contacted her supervisor, Robert Gazall, Boylan also left the Court with the impression, which Boylan knew to be false, that Tuitt was just as likely to be found in Brooklyn, New York as anywhere else. Boylan told the Court that attorney-client communications had transpired in Gazall's conversation with Tuitt but maintained then, and

10

continues to take the position, that the County does not and did not represent Ms. Tuitt. Plaintiff reasons, and the Court agrees, that had Magistrate Judge Majzoub been informed that Ms. Tuitt had placed multiple calls to the County from Trinidad, Tobago just two weeks earlier, left a Trinidad return phone number for return calls, stated to Mr. Gazall that she had no intention of returning to the country, and was informed by Mr. Gazall that the County would undertake her representation if she were to be sued in *Fahner*, it is likely that Magistrate Judge Majzoub would not have ordered substituted service in Brooklyn, New York. It is incredible, Plaintiff avers, that the County did not produce Gazall, or the Surowiec memo, until November 2, 2011 when the parties and the Court had spent so much time and effort in trying to locate Tuitt and had in fact granted Plaintiff's motion for substituted service in New, York.

Defendant argues that Plaintiff's motion is time-barred, assuming that the "order" or "proceeding" that Plaintiff seeks to "set aside" relates to Judge Majzoub's June 28, 2010 hearing or Judge Majzoub's July 13, 2010 hearing, in which attorney Boylan made the misleading statements regarding Nurse Tuitt's whereabouts. (Dkt. No. 202, Defs.' Resp. 26.) Defendant argues that the one-year time limitation applicable to motions brought under Rule 60(b) operates to bar Plaintiff's motion, which was filed on December 8, 2011, more than one year after the hearings before Magistrate Judge Majzoub.

The Court rejects this argument because in fact the "Order" that Plaintiff seeks to have the Court set aside is this Court's June 22, 2011 Order Granting in Part Defendants' Motion for Summary Judgment, which dismissed this case against all of the Wayne County Defendants but denied the motion to dismiss the claims against Nurse Tuitt. (Dkt. No. 199, Pl.'s Mot. 20.) Therefore, the instant motion, which relates to the ongoing conduct of defense counsel in failing to

11

fully disclose important information regarding the whereabouts of Nurse Tuitt, is not barred on grounds of untimeliness.

Turning then to the merits of Plaintiff's argument, the Court must inquire whether any member of defense counsel's team directed information to the Court that was wilfully blind to the truth or in reckless disregard for the truth, that was a positive averment or concealment that counsel was under a duty to disclose, that deceived the Court and prevented Plaintiff from presenting her case fairly and fully. *In re M.T.G.*, *supra*, 400 B.R. at 565-66. If the answer to these questions is yes, then the Court has broad and inherent power to sanction the County and to set aside the judgment:

> Of particular relevance here, the inherent power also allows a federal court to vacate its own judgment upon proof that a fraud has been perpetrated upon the court. *See Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944); *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 580, 66 S.Ct. 1176, 1179, 90 L.Ed. 1447 (1946). This "historic power of equity to set aside fraudulently begotten judgments," *Hazel–Atlas*, 322 U.S. at 245, 64 S.Ct., at 1001, is necessary to the integrity of the courts, for "tampering with the administration of justice in [this] manner ... involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public." *Id.* at 246, 64 S.Ct., at 1001. Moreover, a court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud. *Universal Oil, supra*, 328 U.S. at 580, 66 S.Ct., at 1179.

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

It seems clear that the information that the Wayne County legal department, and specifically Karie Boylan and her boss Robert Gazall, possessed in June and July, 2010, a year prior to this Court's Opinion and Order on Summary Judgment, and failed to disclose to Plaintiff and the Court, prevented Plaintiff from presenting her case "fairly and fully." It is impossible to say, for example, whether Plaintiff would have been able to properly serve Nurse Tuitt, or whether Wayne County would have been obligated to admit to having accepted service on her behalf, had Plaintiff and the

Court timely been informed that Nurse Tuitt had contacted Robert Gazall in June, 2010, and that Gazall had informed Nurse Tuitt at that time that if she was named in the *Fahner* lawsuit, the County would provide for her defense. It is likewise impossible to predict whether the Court's ruling on Defendants' motion for summary judgment would have been affected had Nurse Tuitt appeared in the case and offered testimony or evidence, but certainly, justice would have been served.

Plaintiff requests that the Court enter a default judgment against the County. Alternatively, Plaintiff suggests that she would be willing to set aside the clerk's entry of default as to Nurse Tuitt if the County would accept service on behalf of Nurse Tuitt and provide representation and indemnification as required under the CBA. (Dkt. No. 199, Pl.'s Mot. 20.) Wayne County relies on the unpublished opinion of the Michigan Court of Appeals in *Nelson v. Wayne County*, No. 270852, 2006 WL 3690681 (Mich. Ct. App. Dec. 14, 2006), in support of its argument that Plaintiff is not entitled to the relief she seeks. *Nelson* suggests that a plaintiff who obtains a default judgment against an employee who was subject to a collective bargaining agreement that contained an indemnification agreement cannot recover against the employer as a third-party beneficiary of that indemnification provision. "[A]n objective analysis of the indemnification provision indicates that it is intended to benefit the employees covered by the collective bargaining agreement rather than to protect third parties." *Id.* at *2. *Nelson* really stands for nothing more than the proposition that Plaintiff is not an intended beneficiary of the indemnification provision of the CBA and cannot enforce that contract as a third-party. But that is not what Plaintiff in the instant case seeks to do. Plaintiff only asks that the County be held to the representation that it made to Nurse Tuitt on June 29, 2010, when Robert Gazall informed her that if she was a party to the *Fahner* lawsuit, the County would provide representation for her.

13

The County responds that under the terms of the CBA, the County cannot undertake to represent Nurse Tuitt unless she fills out certain paperwork and requests representation, steps she did not complete in this case. Wayne County relies on language in the indemnification provision that requires an employee to immediately notify corporate counsel in writing upon receipt of notice of a claim and to request legal representation if desired. The Court concludes that the County, on the facts of this case, had notice of the nature of the claim against Nurse Tuitt and had expressed to Nurse Tuitt that it would undertake her representation. Mr. Gazall told Nurse Tuitt that if she were named as a party in the *Fahner* case or had some culpability in that matter, the County would undertake to represent her. He did not tell her that it would be necessary for her to request that representation in writing at some later date. In fact, why would Nurse Tuitt believe it was necessary to ask for representation when it had already been promised to her?

Indeed, it seems clear that Nurse Tuitt understood that she was one with the County in relation to the charges involving Plaintiff's decedent. In an extremely angry phone call placed to Plaintiff's counsel on October 26, 2011, just a few days before Mr. Gazall's deposition, Nurse Tuitt objected to Mr. Robinson's statement that she was "being played by the County," insisting that she "had spoken to the County," that she was "not going to give [Plaintiff's counsel] anything. [That she] worked for the County [and would] never go against the County." (Transcript of October 26, 2011 Telephone Call from Bernadine Tuitt to David Robinson, 1, 3.) Following this statement to Mr. Robinson, and a few expletives, Nurse Tuitt abruptly terminated her conversation with Plaintiff's counsel.

The County cannot plausibly deny that it had adequate notice of the claims against Nurse Tuitt in this case. In fact, at the hearing on the instant motion, Ms. Boylan stated that from the

14

moment she first visited Mr. Pollard in jail after Plaintiff filed this suit she "knew . . . that Bernadine Tuitt was going to be a party to this lawsuit." (Transcript of March 22, 2012 Hearing on Plaintiff's Motion for Sanctions.) It is also clear that Mr. Gazall told Ms. Tuitt that if she were named as a party in this case, or if she had any culpability, the County would represent her. The County must be held to its lead counsel's expressed intention to Nurse Tuitt to undertake its obligations under the CBA with respect to her defense in this matter. Allowing the County to rely on the technicality that Nurse Tuitt did not fill out the proper paperwork rings hollow.

The County further contradicts itself when it states that it has never undertaken to represent Nurse Tuitt, and therefore cannot accept service on her behalf, but at the same time asserts that she is failing to cooperate with the County in her defense! It is quite clear to the Court that the County, after having discovered a working number where Nurse Tuitt could be reached and would actually answer, never endeavored to reach her at that number to tell her that she is a party to the Fahner case, that there is a default judgment against her and that she needs to cooperate with the County in her defense. At the hearing on this motion for sanctions, Ms. Boylan stated that she has "never had somebody so steadfastly refuse to cooperate in any lawsuit whatsoever." (Hr'g Tr. __.) And yet, as Plaintiff's counsel pointed out to the Court, the only evidence before the Court relating to the County's statements to Nurse Tuitt regarding her status as a party to this case is Mr. Gazall's testimony, and Mr. Surowiec's memorandum, confirming that in his June 29, 2010 conversation with Ms. Tuitt, Mr. Gazall expressly told Ms. Tuitt that she was not a party but that if she were to be named a party, the County would represent her.

In fact, there is absolutely no evidence that anyone from Wayne County tried to contact Ms. Tuitt ever again after she called Mr. Gazall on June 29, 2010, to inform her that she was a party and

that she should come in and cooperate with the County. Mr. Gazall testified in his deposition that he never called Ms. Tuitt back to tell her she was a party, never asked her to come in and cooperate and didn't recall telling Karie Boylan to do so. (Pl.'s Mot. Ex. 2, Gazall Dep. 55:10-56:5; 57:15-21.) In fact, Ms. Tuitt's statements in her phone call to Plaintiff's counsel on October 26, 2011 indicate that she has a sense of loyalty to the County, suggesting that had she been so informed and asked, she would have cooperated. There is no indication in the record that after the County had successfully contacted Ms. Tuitt at the phone number in Trinidad, the one working number obtained in the years' long search for her, that they ever called that number again to explain to her that she was a party and needed to come in and cooperate. This is unconscionable.

The Court concludes that it must set aside its prior Opinion and Order granting summary judgment to the County and the remaining Defendants in the case and must direct the County to accept service of Plaintiff's Amended Complaint on behalf of Nurse Tuitt and take whatever steps necessary to answer or otherwise respond to the Amended Complaint on her behalf. While this may seem a harsh result, the County's conduct in this case merits harsh treatment. There is no dispute that the "search for Nurse Tuitt" has occupied hours of both the Court's and the Plaintiff's time in this matter. It is also not disputed that the County knew, in June, 2010, a year before this Court ruled on the County's motion for summary judgment, how to reach Nurse Tuitt in Trinidad, Tobago, that the County in fact contacted her at her Trinidad phone number and when she returned the call to Mr. Gazall, he assured her that if she were named as a party or found to be culpable, the County would provide representation for her. It is also beyond dispute that despite this knowledge, the County failed to disabuse the Court and the Plaintiff of the belief that Nurse Tuitt was just as likely to be found in Brooklyn, New York as anywhere else and let the Court issue orders for substitute service,

16

and let the Plaintiff continue on a useless and expensive endeavor, all the while knowing that Nurse Tuitt was just a phone call away. This case calls for the Court's exercise of its inherent power to sanction and, on these facts, to set aside its ruling on summary judgment and direct the County to accept service on Nurse Tuitt's behalf.

### IV. CONCLUSION

For the foregoing reasons, the Court:

(1) GRANTS Plaintiff's motion under Federal Rule of Civil Procedure 60(b)(3) to set aside its June 22, 2011 Opinion and Order Granting Remaining Defendants' Motion for Summary Judgment (Dkt. No. 199);

(2) SETS ASIDE the Clerk's Entry of Default as to Bernadine Tuitt (Dkt. No. 170);

(3) DENIES WITHOUT PREJUDICE Plaintiff's Motion for Default Judgment (Dkt. No. 179); and

(4) ORDERS Counsel for Wayne County to accept service on behalf of Bernadine Tuitt and to answer or otherwise respond to Plaintiff's Amended Complaint on her behalf on or before April 30, 2012.

This case continues!

IT IS SO ORDERED.

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: 4-4-12